UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL R. MURPHY,

        Petitioner,

-vs-                                        Case No.  8:06-cv-1633-T-17EAJ

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.
_____/

## **ORDER**

This cause is before the Court on Petitioner Michael R. Murphy's 28 U.S.C. § 2254 petition for writ of habeas corpus.  Murphy challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.

### PROCEDURAL HISTORY

Michael Murphy was indicted and convicted after a jury trial held November 27-December 1, 1995, of the first degree murder of Paul Miles and grand theft of the victim's motor vehicle. On January 5, 1996, Murphy was adjudicated guilty in accordance with the verdicts and sentenced on the first degree murder conviction to life in prison. A concurrent five-year prison term was imposed on the grand theft count.

Murphy prosecuted a direct appeal from his trial-based judgment, arguing the state court erred in denying his motion to suppress and also raising a cumulative impact claim regarding alleged trial court error. In addition, he challenged his grand theft sentence. On May 23, 1997, the state district court of appeal affirmed the convictions, but reversed the grand theft sentence

for resentencing within Florida's sentencing guidelines. Murphy v. State, 694 So. 2d 835 (Fla. 2nd DCA 1997). No rehearing was sought. On June 3, 1997, he was sentenced to time served on the grand theft count. He did not appeal, and his judgment became final 30 days later.

Murphy filed a pro se motion dated May 11, 1999, for an extension of time to file a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. By order rendered June 8, 1999, a sixty day extension of time, until August 13, 1999, was extended to Murphy to file a rule 3.850 motion. Murphy filed a pro se rule 3.850 motion dated August 13, 1999, raising ten grounds with various subclaims. He filed an amended pro se rule 3.850 motion dated April 26, 2000. A nonfinal order was rendered May 18, 2001, summarily denying claims 1B & 1G and directing the state to respond to the remaining claims. Following a response by the state, claims 1J and 1K were summarily denied by order rendered July 30, 2001. The outstanding rule 3.850 grounds were denied after an evidentiary hearing, at which Murphy was afforded collateral counsel, by final order rendered September 3, 2002. Murphy appealed, and following briefing, on November 21, 2003, the state district court of appeal per curiam affirmed without written decision in case no. 2D02-3986. Murphy v. State, 864 So. 2d 414 (Fla. 2nd DCA 2003)[table]. The mandate issued December 22, 2003.

On September 7, 2004, Murphy filed a pro se motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). On January 3, 2005, his first degree murder sentence was corrected to reflect parole eligibility after no less than 25 years prison.

Murphy filed another pro se rule 3.850 motion dated December 2005, in which he alleged his trial counsel was ineffective for not arguing in his motion for judgment of acquittal the elements of first degree murder were not established. By order rendered March 24, 2006, the postconviction court denied his rule 3.850 motion without an evidentiary hearing, finding his

contention refuted by the record. Murphy appealed the summary order, and on August 23, 2006, the state district court affirmed with citation only in case no. 2D06-2369, stating:

> Affirmed. See Pope v. State, 702 So. 2d 221 (Fla. 1997); Brown v. State, 827 So. 2d 1054 (Fla. 2d DCA 2002); Green v. State, 765 So. 2d 825 (Fla. 2d DCA 2000); Jackson v. State, 640 So. 2d 1173 (Fla. 2d DCA 1994) ; Joseph v. State, 835 So. 2d 1221 (Fla. 5th DCA 2003). . . . .

Murphy v. State, 937 So. 2d 132 (Fla. 2nd DCA 2006). The mandate issued September 13, 2006.

## THE PRESENT PETITION

Murphy filed a pro se 28 U.S.C. § 2254 petition dated August 28, 2006, which is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), see Lindh v. Murphy, 521 U.S. 320, 336 (1997)."A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Additionally, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In Artuz v. Bennett, 531 U.S. 4 (2000), the Supreme Court determined that "an application is properly filed' under § 2244(d)(2) when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. at 8. The Court explained that laws and rules governing filings "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. The Supreme Court concluded that the question of whether a petitioner

has "properly filed" an application "is quite separate from the question of whether the claims contained in the application are meritorious and free of a procedural bar." Id. at 9. Under Artuz, the Eleventh Circuit looks to the state procedural rules governing filings to determine whether an application for state post-conviction relief is "properly filed." Wade v. Battle, 379 F.3d 1254, 1259-1260 (11th Cir. 2004).

Murphy's first two grounds in the present petition challenge his judgment of conviction for first degree murder. The third challenges the 2005 rule 3.800(a) judgment, which Murphy frames as a resentencing judgment.

For purposes of 28 U.S.C. § 2244(d), his state judgment of conviction became final upon expiration of the time for appealing following the June 3, 1997, sentencing on his grand theft conviction. Murphy could not seek certiorari review in the United States Supreme Court because he did not obtain a judgment from a state court of last resort by appealing the rule 3.800 outcome. Accordingly, his AEDPA limitations period commenced July 3, 1997.

Murphy's AEDPA limitations period for bringing a federal attack on his state judgment of conviction is not governed nor reset by the 2005 rule 3.800(a) order/disposition. Murphy's sentences became final at the same time as his convictions, by the conclusion of direct review or the expiration of the time for seeking such review. More particularly, and as indicated above, finality occurred upon expiration of the time for appealing the 1997 vacating of the (original) grand theft sentence and imposition of time served in the county jail. It was not until his collateral 3.800(a) attack that the first degree murder sentence was ministerially corrected to reflect parole eligibility. Because this result was collaterally gained, i.e., only after finality of the judgment of conviction and sentences had been achieved, the rule 3.800(a) correction does not restart Murphy's time for attacking his state convictions under § 2244(d)(1).

Murphy is not entitled to use the "latest" of the four possible start dates described in 28 U.S.C. § 2244(d)(1) to render timely an attack on his state conviction because Congress did not provide that the "latest" of possible start dates for multiple judgments would retrigger an AEDPA limitations period for raising stale claims attacking a final judgment. The reference to "the latest" date in § 2244(d)(1) directs the court how to choose from among the four dates specified in subsections (A) through (D) once those dates are identified. However, this language does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims.

In Walker v. Crosby, 341 F.3d 1240, 1245 (11th Cir. 2003), the Eleventh Circuit held that a single limitation period applies to an entire habeas application so long as one claim fits into one of the four subcategories delineated in the AEDPA statute of limitations. The Walker court addressed the timeliness issue in relation to a resentencing that did not result from direct review, similar to the instant case. Walker's original conviction became final by the conclusion of direct review on August 7, 1991. Walker's resentencing judgment, however, did not become final by the conclusion of direct review until June 5, 1998. He was allowed to challenge both of these judgments in a single habeas petition under Rule 2(d) of the Rules Governing Section 2254 Cases. The Eleventh Circuit concluded the statute of limitations in § 2244(d)(1) applies to the application as a whole and individual claims within an application cannot be reviewed separately for timeliness. Holding that the limitations period in § 2244(d)(1) must run from the "latest" of the several possible triggering dates provided in its subparagraphs, the Eleventh Circuit held the limitations period for Walker ran from the date upon which his resentencing judgment became final by the conclusion of direct review under 2244(d)(1)(A).

However, in Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004), the Third Circuit, upon

thorough analysis of the issue, disagreed with Walker on several grounds. First, the court found that reading the statute in such manner subjects the interpretation of the statute as a whole to internal inconsistencies. The statute states that the limitation period should begin to run "from the latest of" four possible triggers. In the case of multiple claims, the statute is silent as to which trigger the court should adopt, the earlier or the later. Nothing in the statute requires the court to automatically pick the later date over the earlier date. In petitions with multiple claims, Walker instructs the court to pick the later date, even though the statute is silent on the issue. On the other hand, if each claim is analyzed individually for timeliness, there is no need for the court to blindly pick the earlier or later date. Id. at 118-19.

Second, the Third Circuit criticized the Walker interpretation as contrary to common sense. "In both civil and criminal cases, statutes of limitations are applied on a claim-by-claim or count-by-count basis. . . . No one, we assume, would argue that, in a civil case with multiple federal claims, the statute of limitations must begin on the same date for every claim. Rather, each claim must be analyzed separately." Id. at 119.

Finally, the Third Circuit found that permitting late-filed claims to survive would produce "strange" results. "Specifically, the Walker interpretation has the effect of permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier. . . . Neither Fielder nor the Walker Court has explained why Congress might have wanted to produce such results, and we cannot think of any plausible explanation." Id. at 120.

In Pace v. DiGuglielmo, 544 U.S. 408 (2005), the Supreme Court provided guidance indicating that the statute of limitations applies on a claim-by-claim basis, stating: [Section] 2244(d)(1) provides that a "1-year period of limitation shall apply to an application for a writ of

habeas corpus."  The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B)  (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate). Id. at 416 n.6. n 1. The above language in Pace reflects calculation of the commencement of the limitations period can allow claim-by-claim consideration. Although this circuit's precedent would ordinarily foreclose such a conclusion if not reached by a lower court, post-Pace, the  Walker approach is no longer viable where a petitioner raises  claims which attack different "pertinent" judgments in a single petition such as Murphy's. Therefore, in this case, the Court will apply the statute of limitations by considering the  "pertinent judgment" attacked in the petition. E.g., Loomis v.  Blades, 2006 WL 2265260. (D. Idaho Aug. 8, 2006)(post-Pace  decision applying statute of limitations on a claim-by-claim  basis); see also, Khan v. United States, 414 F. Supp. 2d 210, 216  (D. N.Y. 2006)(§ 2255 case in which district court agreed with Third  Circuit's interpretation of the statute of limitations and declining to adopt federal prisoner's position his late-filed ineffective assistance of counsel claim could be considered because  it was paired with a claim that was "newly recognized" by the  Supreme Court).

Pace supports the conclusion that a state prisoner such as Murphy cannot delay his AEDPA start date for attacking a state  conviction by patching in a ground assailing a later judgment/order, such as the rule 3.800(a) correction. Murphy to bring a timely federal petition attacking the judgment of conviction must have done so within one year after his direct  review of the trial-based judgment had concluded. He did not do so.

None of Murphy's collateral applications operated to toll his limitations period for attacking his judgment of conviction. By the time he filed his first rule 3.850 motion, his

AEDPA's limitations period had expired. His rule 3.800(a) and 3.850 motions, filed after the expiration of the AEDPA limitations period, did not toll the one-year period because there was no period remaining to be tolled. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (rejecting theory that limitations period was reinitiated upon filing of timely rule 3.850 motion outside limitations period); see also, Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.)(rejecting argument AEDPA limitations period tolled for time period prisoner had availed himself of new rule setting two-year limit for ineffective assistance of appellate counsel claims), cert. denied, 531 U.S. 991

The last ground in the present federal petition attacks the rule 3.800(a) correction of his first degree murder sentence, which resulted from a collateral attack, rather than direct review, of the original conviction and sentencing. Even with respect to this ground, the instant petition is time-barred by 28 U.S.C. § 2244(d). The limited sentencing correction was only a ministerial act pursuant to the rule 3.800(a) order to reflect his parole eligibility after serving no less than 25 years incarceration. The sentence itself did not change; the minimum 25-year period precedent to parole eligibility merely documented state law; it was not an act involving a grant of parole eligibility or the exercise of any discretion, and neither lengthened nor shortened his sentence.[1]

Even assuming the January 5, 2005, ministerial correction was appealable, it would have been final 30 days later for purposes of the commencement of the AEDPA limitations period for attacking such judgment because Murphy did not take an appeal from the rule 3.800(a) result. Thereafter, Murphy did not have a qualifying motion that would toll the time

---

[1] In general, a defendant in Florida need not be present or represented by counsel when the purpose of a resentencing is the performance of a ministerial-type function or the correction of a clerical error. Nickerson v. State, 927 So. 2d 114 (Fla. 2nd DCA 2006).

for attacking the rule 3.800(a) correction in a timely federal habeas corpus petition. Murphy's untimely and successive rule 3.850 motion did not collaterally attack the rule 3.800(a) result, the "pertinent judgment" with regard to ground three of the federal petition. Accordingly, the second rule 3.850 motion cannot qualify as an application for state post-conviction or other collateral review with respect to the "pertinent judgment" under § 2244(d)(2). By the time he filed the instant petition, his AEDPA limitations period for attacking the rule 3.800(a) judgment, even if deemed a resentencing, had expired.

Moreover, his second rule 3.850 motion does not qualify as "properly filed" under the tolling statute, with respect to either the convictions or sentence. This is because of its untimeliness [rather than successiveness]. In affirming the denial of his second rule 3.850 motion, the state district court of appeal set forth state decision law applying, among other things, rule 3.850's time limit. Thus, although the state postconviction court did not deem the application untimely, the decision of court of last resort clearly applied the state's time limitation[2]. Because his second rule 3.850 motion did not comply with the state's two-year time limitation, it was improperly filed and thus will not afford Murphy any tolling relief. See Pace, 544 U.S. at 417 (Time limits, no matter their form, are "filing" conditions. If a state court rejects a habeas petitioner's petition as untimely, it is not "properly filed," and the petitioner is therefore not entitled to statutory tolling under § 2244(d)(2).).

Murphy offers this Court a claim of actual innocence, asserting the existence of new

---

[2] This is shown, for example, by the citation in the decision to state law requiring that successive postconviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence. E.g., Pope v. State, 702 So. 2d 221 (Fla. 1997). Moreover, the state court need not have feared forfeiture of the time limitation by alternatively addressing the motion. "[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." See Alderman v. Zant, 22 F.3d 1541, 1550 n.10 (11th Cir. 1994)(collecting cases), cert. denied, 115 S. Ct. 673 (1994); see also, Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir.), cert. denied, 490 U.S. 1071(1989).

evidence. Lest he so urge in any endeavor to avoid the preclusive effect of the AEDPA time-bar, Murphy does not qualify for measurement of his AEDPA's limitations period under 28 U.S.C. § 2244(d)(1)(D). Under subpart (D), the one year period begins to run on "the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). In Murphy's case, he cites to no new evidence not available at the time of his trial to trigger a new limitations period. Murphy relies upon his request for a print comparison made in his first rule 3.850 proceeding, but he did not then, and does not now, point to any new evidence which was not available with the exercise of diligence by the time of his jury trial.

Murphy merely wants to explore known or available facts to support his claim of factual innocence. § 2244(d)(1)(D) does not restart the limitations period when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact; as a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new limitations period under § 2244(d)(1)(D). See Flanagan v. Johnson,154 F.3d 196, 199 (5th Cir. 1998)("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay...while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim.").

Even if additional evidence in support of a known claim and known predicate could somehow qualify as a basis for giving a petitioner such as Murphy a fresh year in which to bring his federal attack, under 2244(d)(1)(D), the one-year period of limitation commences under 28 U.S.C. § 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered. See Schlueter v.

Varner, 384 F.3d 69, 74 (3d Cir. 2004) (citations omitted) Whether a habeas petitioner has exercised due diligence is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information." Wilson v. Beard, 426 F.3d 653, 661-62 (3d Cir. 2005). It has been held that while this standard does not require "the maximum feasible diligence," it does require reasonable diligence in the circumstances. Schlueter, 384 F.3d at 74. A petitioner can only avail himself of a later accrual date "if vital facts could not have been known." Id.

Murphy cannot restart his AEDPA limitations period by his reliance on his claim of omission of his trial counsel in which he faulted counsel for not pursuing fingerprint comparisons. Before trial and in any case, before expiration of the AEDPA limitations period for attacking his conviction, Murphy could have, through the exercise of diligence, inquired into the existence of latent print evidence. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit, as [the petitioner's] case illustrates. . . . [The petitioner] is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.")

Pointing to no new evidence and having waited long after his judgment of conviction became final before seeking to have evidence available before trial commenced, Murphy has not shown the requisite "exercise of due diligence" required to trigger 28 U.S.C. § 2244(d)(1)(D). The factual predicate for his claim was known to Murphy at the time of his trial

and in any case was available to him with due diligence before the expiration of his AEDPA limitations period. There being no statutory tolling of the limitations period and no basis to reset his AEDPA time-clock, Murphy's federal petition is subject to dismissal for untimeliness.

Were actual innocence an exception to the AEDPA statute of limitations, Murphy would have to present new reliable evidence of actual innocence as contemplated by Schlup v. Delo, 513 U.S. 298 (1995). Not having such evidence, he cannot show no reasonable juror would find him guilty beyond a reasonable doubt in light of new evidence. See House v. Bell, 126 S. Ct. 2064, 2077 (2006)(A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt -- or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt). Thus, this Court need not determine whether "actual innocence" would constitute a freestanding exception to § 2244(d). See also, Allen v. Yukins, 366 F.3d 396 (6th Cir. 2004)(refusing to consider an exception to the statute of limitations "because the [evidence is] legally insufficient to establish that [petitioner] is actually innocent of the assault charge").

The Supreme Court has never squarely addressed the question of whether equitable tolling is applicable to AEDPA's statute of limitations. See Pace, 125 S. Ct. at 1815 (because respondent assumed equitable tolling applied and because petitioner was not entitled to equitable tolling under any standard, Court assumed without deciding its application for purposes of case); cf., Pliler v. Ford, 542 U.S. 225 (2004). The Eleventh Circuit has held that equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition. Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir.

2001).

Murphy's is not a case where extraordinary circumstances prevented an otherwise diligent petitioner from timely filing his petition. He unreasonably tarried in bringing his first rule 3.850 attack. In addition, he delayed unnecessarily in bringing an available rule 3.800(a) motion, as well as waiting after conclusion of his rule 3.800(a) proceeding before filing his federal petition. Murphy does not present a sufficient basis upon which to conclude he used due diligence in pursuing his ground and seeking habeas corpus relief in a timely manner.

## Motion for Consideration of Actual Innocence

Murphy filed a motion for consideration of actual innocence and a reply to the response. (Doc. Nos. 13, 14). In House v. Bell, 126 S. Ct. 2064 (2006) the United States Supreme Court held that a petitioner claiming actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, it s more likely than no that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. To meet this standard, a petitioner must meet the Schlup v. Delo standard: "it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998)(quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup 513 U.S. at 324. Petitioner must show "as a factual matter, that he did not commit the crime of conviction."

Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

Murphy has not met the House or the Schlup standard to allow his claim of actual innocence to overcome the untimeliness of his petition. The Court is not persuaded by the arguments in his reply or the exhibits in his appendix (Doc. No. 15). The transcripts Murphy submitted convince this Court that he could not present any new reliable evidence that was not presented at trial to show that he did not commit the crime of conviction.

Accordingly, the Court orders:

1. That Murphy's motion for consideration of actual innocence (Doc. No. 13) is denied.

2. That Murphy's petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Murphy and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 22, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Michael R. Murphy